[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 30, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-11771
Non-Argument Calendar

_____

D. C. Docket No. 04-00054-CV-1-MP-AK

ROBERT B. LEWIS,

Plaintiff-Appellant,

versus

ASPLUNDH TREE EXPERT COMPANY,
a Pennsylvania corporation,
CITY OF GAINESVILLE, FL,
a political subdivision,
JAMES R. EVANS,
in his individual capacity, a.k.a. Pete Evans,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(December 30, 2008)

Before TJOFLAT, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Robert Lewis appeals the dismissal of his employment discrimination, 42 U.S.C. § 1983, and state law tort claims against the City of Gainesville and a former city employee, Robert "Pete" Evans. In the portion of the district court's order regarding the employment discrimination claim, the district court considered documents outside of the pleadings. In doing so, it converted the motion to dismiss into a motion for summary judgment. It did not, however, comply with the notice requirements of Federal Rule of Civil Procedure 56(c). Because the law of this circuit is clear that such notice is mandatory, we reverse the district court's judgment on this issue and remand for further proceedings consistent with this opinion, but affirm the dismissal of the § 1983 and state law tort claims.

## I.

Robert Lewis, an African-American male, was hired by Asplundh Tree Expert Company in 1994 as a laborer. At that time, Asplundh had a three-year contract with Gainesville Regional Utilities (GRU) of Gainesville, Florida, to dig ditches and lay underground cable. That contract was to expire in October 1996. Lewis' claims stem from the actions of James "Pete" Evans, who was an inspector for GRU. As an inspector, Evans frequently visited the job site to deliver work

2

orders and inspect the work performed to determine if it was acceptable. According to Lewis, when Evans visited the job site, he would make would racial jokes and other offensive comments to Lewis and other workers. When Lewis complained to his crew foreman he was told to ignore Evans' comments and concentrate on his work.

Evans' alleged behavior escalated on April 1, 1996. On that day, according to the complaint, Evans snuck up behind Lewis while he was working in a ditch, put a noose around his neck, and threatened to hang him from a nearby oak tree. Lewis complained about that incident to Asplundh's general foreman, Larry Mattingly. Lewis asserts that Mattingly did not want to report the issue to GRU or to the City. Instead, Mattingly arranged for Lewis, Evans, and he to meet in a nearby field. Lewis brought a witness with him because he feared that he might be harmed. At that meeting, Evans apologized to Lewis for any offensive conduct. Lewis alleges that the meeting was an attempt by Mattingly to cover up the noose incident so that Mattingly would not have to file a complaint against Evans.

Later in 1996, Asplundh began to lay off workers from the GRU project. In June of 1996 Lewis lost his job in the second series of those layoffs. By the end of that year all the other members of the Asplundh crews at the Gainesville location lost their jobs. Lewis maintains that he was laid off because he continued to

3

complain about Evans' harassment and the way that Mattingly had handled his report of the noose incident.

After being laid off Lewis contacted the Equal Opportunity Employment Commission to file a claim based on his mistreatment. In an EEOC questionnaire he filled out in July of 1996, Lewis listed both "Asplundh Tree Company" and "Gainesville Regional Utility" as parties that he believed had discriminated against him.

In August of 1996 Lewis filed a formal charge of discrimination with the EEOC. In his charge, he stated that he had been "subjected to racial harassment from Pete Evens, GRU Inspector." In addition to that racial harassment claim, Lewis charged disparate pay and retaliatory discharge. In the section of the form asking Lewis to list the party or parties that had discriminated against him, Lewis did not list the GRU or the City but only Asplundh. Over a period of thirty-two months the EEOC investigated the allegations against Asplundh and eventually filed a complaint against the company. That lawsuit was dismissed by the district court because the EEOC had not properly engaged in conciliation with Asplundh. We affirmed that dismissal. The EEOC then issued Lewis a right to sue letter.

In May of 2004 Lewis filed a complaint in district court against Asplundh, the City, and Evans, alleging employment discrimination under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., civil rights violations under 42 U.S.C. § 1983, and state law tort claims for assault and battery.

All of the defendants filed motions to dismiss, which the district court denied. In the district court's order, it concluded that Lewis' failure to name the City in the EEOC charge did not bar his suit. The court reasoned that because the City had notice of the charge, participated in the EEOC proceedings, and had an opportunity to conciliate, the failure to formally name the City "does not violate the policy behind the EEOC process." The defendants filed a motion to reconsider, which the district court granted, but not on the ground that the charge Lewis had filed with the EEOC had failed to name the City as a party. Instead, the court granted the motion to reconsider because the complaint that Lewis had filed in the district court was defective. It was defective because it failed to specify the legal basis for each count. Instead of dismissing the complaint, the court ordered Lewis to file an amended one. In the meantime Lewis and Asplundh reached a settlement agreement.

After Lewis filed his amended complaint, both the City and Evans filed motions to dismiss under Rule 12(b)(1) and 12(b)(6).[1] Lewis filed a motion for

_____

[1] Lewis' amended complaint also named Asplundh as a defendant. When Asplundh filed a motion to dismiss based on the parties' settlement agreement, Lewis voluntarily dismissed his claims against Asplundh.

partial summary judgment. In its motion to dismiss, the City again contended that it could not be named as a defendant in Lewis' Title VII claims because it had not been named in the EEOC charge. In ruling on that issue, the district court considered various exhibits that the parties had attached to their briefs, including several affidavit and declarations, as well as documents related to the earlier EEOC investigation of Asplundh resulting from Lewis' discrimination charge. The district court agreed with the City's contention that it could not be named as a defendant in Lewis' Title VII claims. The court also agreed with the City and Evans that the § 1983 and state law tort claims were time-barred. As a result, the court granted the City's and Evans' motions to dismiss on all of Lewis' claims and denied Lewis' motion for partial summary judgment.

## II.

We begin with the § 1983 and state law assault and battery claims. Because there is no federal statute of limitations period for § 1983 actions, the relevant state's statute of limitations for personal injury claims applies. Owens v. Okure, 488 U.S. 235, 239–41, 109 S.Ct. 573, 576–77 (1989). Florida's statute of limitations for personal injury claims, and thus for § 1983 claims in that state, is four years. See Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003). A cause of action for a § 1983 claim accrues when "the [a] plaintiff[] know[s] or should

6

know (1) that [he has] suffered the injury that forms the basis of [his] complaint and (2) who has inflicted the injury." Id.

Lewis argues that the statute of limitations should be tolled for the period of the EEOC investigation. The Supreme Court has held, however, that the pendency of an EEOC claim does not toll the statute of limitations for a private civil rights claim because the two claims are "truly independent." Johnson v. Ry. Express Agency, 421 U.S. 454, 466, 95 S. Ct. 1716 (1975); see also Smith v. McClammy, 740 F.2d 925, 927 (11th Cir. 1984) ("Since exhaustion of administrative remedies is not a prerequisite to filing [a § 1983] suit, the statute [of limitations] would not be tolled pending pursuit of administrative remedies but would begin to run on the date the cause of action accrued.").

Here the injury that forms the basis of Lewis' § 1983 claim is the alleged noose incident, which occurred on April 1, 1996. He did not file this action until almost eight years later. As the district court pointed out, even if we assume that the facts supporting Lewis' § 1983 claim were not apparent until after he contacted the EEOC in August of 1996, the statute of limitations expired well before Lewis filed his complaint on May 25, 2004.

Lewis' state law assault and battery claim based on the noose incident is also subject to a four year statute of limitations. See Fla. Stat. 95.11(3)(0). The statute

7

of limitations for that claim began to run on April 1, 1996, <u>see</u> Fla. Stat. 95.031(1), and therefore is also time-barred. The district court was correct to conclude that both the § 1983 and the state law tort claims were barred on statute of limitations grounds.

## III.

We turn now to the issue of whether the district court properly granted the City's motion to dismiss with regard to the Title VII claims. Because the district court looked beyond the pleadings in granting that motion, we must decide whether it complied with the Federal Rules of Civil Procedure in converting the motion to dismiss into a motion for summary judgment. <u>See</u> <u>Griffith v. Wainwright</u>, 772 F.2d 822, 824 (11th Cir. 1985). Although the motion to dismiss specifies both Rule 12(b)(1) or Rule 12(b)(6), the order granting it does not specify which rule the court proceeded under. If the court decided the motion under Rule 12(b)(1), it could have looked beyond the pleadings to determine whether there was subject matter jurisdiction. <u>See</u> <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990). Here, however, the district court could not have properly decided the matters at issue under Rule 12(b)(1) because the failure to name a party in the EEOC charge does not raise a jurisdictional bar. <u>See</u> <u>Jackson v. Seaboard C. L. R. Co.</u>, 678 F.2d 992, 1010 (11th Cir. 1982). We assume, therefore, that the district

court decided the motion to dismiss under Rule 12(b)(6).

As a general rule, the district court must "limit[] its consideration to the pleadings and exhibits attached thereto" when deciding a Rule 12(b)(6) motion to dismiss. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotation marks omitted). If the parties present evidence outside of the pleadings, and the district court considers that evidence, then the motion to dismiss is converted into a motion for summary judgment. See Fed. R. Civ. P. 12(b)(6); Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). "It is clearly the law in this circuit that whenever a district judge converts a 12(b)(6) motion to dismiss into one for summary judgment by considering matters outside the pleadings the judge must give all parties ten-days notice that he is so converting the motion." Donaldson v. Clark, 819 F.2d 1551, 1555 (11th Cir. 1987); see also Fed. R. Civ. P. 56(c). Here the district court's order shows that it considered various exhibits that were attached to the parties' briefs in deciding whether the City had received sufficient notice of Lewis's EEOC charge and had been given an opportunity for voluntary compliance:

> The EEOC neither notified the City that reasonable cause existed to believe that the City may have violated Title VII, nor offered it an opportunity for voluntary compliance. (Doc. 117, EEOC Charge, Exhibit # 1 at l) (illustrating failure to identify "City of Gainesville" in EEOC Charge); (Doc. 117, West Declaration, Exhibit # 3 at 2) (discussing sending notice of the charge of discrimination to

9

Asplundh and not the City of Gainesville); (Doc. 117, West Declaration, Exhibit # 3 at 2) (discussing investigation of charge against Asplundh and not the City of Gainesville); (Doc. 117, Asplundh Correspondence with EEOC, Exhibit # 3 at 9-10) (responding to charge from EEOC); (Doc. 117, EEOC Correspondence with Asplundh, Exhibit # 3 at 1 l-12) (requesting additional information from Asplundh); (Doc. 117, Asplundh Correspondence with EEOC, Exhibit # 9 at 13-15) (responding to request for additional information); (Doc. 117, Waratuke Affidavit, Exhibit # 4 at 2) (discussing failure of EEOC to send letter of determination and attempt of conciliation to the City of Gainesville); (Doc. 117, West Declaration, Exhibit # 3 at 2-3) (discussing attempts at conciliation with Asplundh and filing of lawsuit against Asplundh).

By considering those materials, the district court converted the motion to dismiss into one for summary judgment. See Finn, 722 F.2d at 713 ("The defendant-appellee in this case filed a Rule 12(b)(6) motion with various attached exhibits. Appellant responded to the motion and also attached exhibits. The court considered all these documents in rendering its decision. The 12(b)(6) motion thus was converted into a summary judgment motion necessitating all the procedural safeguards of Rule 56.").

We have a "bright line rule" on this issue: "If a district court fails to comply with the ten-day notice requirement [of Rule 56(c)], the case will be reversed and remanded so that the district court may provide the non-moving party with adequate notice." Jones v. Auto. Ins. Co. of Hartford, Conn., 917 F.2d 1528, 1532 (11th Cir. 1990).

10

In certain circumstances, we have concluded that the failure to provide the requisite notice was harmless. See Denis v. Liberty Mut. Ins. Co., 791 F.2d 846, 850 (11th Cir. 1986). We have noted, however, that this exception is appropriate in only the "very unique case" where: 1) all of the parties were well aware that the judge was converting the Rule 12(b)(6) motion; and 2) the parties would not have made additional arguments or submitted additional evidence had they received the required notice. See Property Mgmt. & Invs. Inc. v. Lewis, 752 F.2d 599, 605 (11th Cir. 1985). In both Property Managment and Denis, the district court expressly stated that it was converting the motions to dismiss into motions for summary judgment because the parties had introduced evidence outside of the pleadings. See Denis, 791 F.2d at 848; Property Mgmt., 752 F.2d at 602. In Denis, we further noted that it was clear that the appellant was aware of the conversion because his motion to reconsider made arguments based on the summary judgment standard of "a genuine issue of material fact." Denis, 791 F.2d at 850. By contrast, the record in this case does not demonstrate that the parties were aware that the district court was converting the motion to dismiss into one for summary judgment.

Formalistic though they may be, "[p]roper procedures must be followed" when motions to dismiss are converted to motions for summary judgment. Finn,

11

722 F.2d at 713. As in <u>Finn</u>, "[w]e will not speculate on what actions the parties will take nor the possible rulings by the trial court. Nor do we make any comments upon the merits of the claims presented." <u>Id.</u> We hold only that the district court's consideration of matters outside of the pleadings converted the City's motion to dismiss regarding Lewis's Title VII claims into one for summary judgment and that the required notice was not provided.

**IV.**

We AFFIRM the judgment of the district court insofar as it granted the motion to dismiss the § 1983 and state law tort claims. Insofar as the district court granted the motion to dismiss the Title VII claims, we REVERSE the judgment and REMAND for further proceedings consistent with this opinion.